UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ZENO ANTHONY STAGGER, #666685,

                Petitioner,

                                          CASE NO. 2:10-CV-14553

v.                                      HONORABLE GEORGE CARAM STEEH

BLAINE LAFLER,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS
CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY,
BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I.**    **Introduction**

       This is a pro se habeas corpus case brought under 28 U.S.C. § 2254.  Michigan

prisoner Zeno Anthony Stagger ("petitioner") was convicted of five counts of first-degree

criminal sexual conduct.  See MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration

of a person younger than 13).  Petitioner was sentenced in 2007 as a second habitual

offender, MICH. COMP. LAWS § 769.10, to concurrent terms of thirty to fifty years in

prison for each conviction.

       In his pleading, petitioner claims that:  (1) his trial attorney provided ineffective

assistance by not investigating an insanity defense; (2) the trial court deprived him of

due process by failing to give a missing-evidence jury instruction; (3) the trial court erred

in scoring the offense variables of his sentencing guidelines; and (4) his sentence

violates the Due Process Clause because it was based on incomplete and inaccurate

-1-

information.  Respondent Blaine Lafler asserts in an answer to the petition that claims

two and four are procedurally defaulted because petitioner failed to object to the alleged

errors in the trial court and because the state appellate court relied on that omission to

deny relief.  Respondent urges the Court to deny relief on the remaining claims because

the state appellate court's decision on those claims was objectively reasonable.  The

Court has concluded from a review of the pleadings and the record that petitioner's

claims lack merit and do not warrant habeas relief.  Accordingly, the petition will be

denied.

## II.    <u>Facts and Procedural History</u>

Petitioner was charged with five counts of first-degree criminal sexual conduct,

MICH. COMP. LAWS § 750.520b(1)(a) (sexual penetration of a person younger than

thirteen), and one count of second-degree criminal sexual conduct, MICH. COMP. LAWS §

750.520c(1)(a) (sexual contact with a person younger than thirteen).  The charges

arose from allegations that petitioner sexually abused his girlfriend's daughters (J.G.

and Z.G.) in 2006.[1]

J.G. was eight or nine years old when the abuse occurred, and Z.G. was ten

years old at the time.  The girls were one year older when they testified at petitioner's

trial in 2007.  Their cousin, Tashika Alexander, testified that she became aware of

allegations of sexual abuse against J.G. and Z.G. after the girls' mother asked her to

question the girls about whether they had been sexually abused.  (Trial Tr. Vol. I, 115-

16, Oct. 11, 2007.)  Alexander did so, and both girls told her that petitioner had sexually

---

[1] The Court will refer to the complaining witnesses by their initials.

abused them.  (Id. at 118-20.)  Alexander testified that she did not file a police report

until about a month after she found out what happened to the girls.  She delayed

reporting the abuse because she thought that the girls' mother would file the report.

The mother, however, failed to file a report.  (Id. at 121.)

      J.G.'s testimony was consistent with the allegations of sexual penetration, what

the Michigan Court of Appeals characterized as "digital penetration of the victim's

vagina, cunnilingus, and an inference of anal penetration."  People v. Stagger, No.

282220, 2009 WL 1567349, at *5 (Mich. Ct. App. June 4, 2009) (unpublished); see also

Trial Tr. Vol. I, 153-61, Oct. 11, 2007.  Z.G testified that petitioner touched her private

part.  (Id. at 187-88.)  A social worker who interviewed the girls testified that both girls

gave statements consistent with the allegations against petitioner.  (Id. at 228.)  The

social worker also testified that a DVD recording of J.G.'s interview was not available

because of a disc error.  (Id. at 204-05.)  Petitioner testified in his own defense and

denied the allegations.  (Id. at 271-80.)

      The jury found petitioner guilty of the five counts of first-degree criminal sexual

conduct, but not guilty of the count charging him with second-degree criminal sexual

conduct.  (Trial Tr. Vol. III, 4, Oct. 15, 2007.)  Petitioner was sentenced on Nov. 9, 2007,

to five concurrent terms of thirty to fifty years' imprisonment.  (Sentence Tr. 23, Nov. 9,

2007.)  Following his conviction and sentence, petitioner filed an appeal in the Michigan

Court of Appeals, raising the same claims that he now brings.  The Court of Appeals

affirmed petitioner's conviction and sentence, but remanded the case for an

administrative correction of petitioner's sentencing guidelines.  See Stagger, 2009 WL

1567349, at *6.  The correction did not change the sentencing guidelines range.  Id. at

-3-

*3.  Petitioner then filed an application for leave to appeal with the Michigan Supreme

Court, raising the same claims.  The Michigan Supreme Court denied his application in

a standard order.  See People v. Stagger, 773 N.W.2d 697 (Mich. 2009) (table).

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs

this case because petitioner filed his petition after the AEDPA's effective date.  See

Lindh v. Murphy, 521 U.S. 320, 336 (1997).  This law restricts when a federal court may

grant a petition for the writ of habeas corpus:

> **(d)** An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim–
>
>> **(1)** resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> **(2)** resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d) (1996).

Case law has further clarified the statute.  "A state court's decision is 'contrary to'

. . . clearly established law if it 'applies a rule that contradicts the governing law set forth

in [Supreme Court cases]' or if it 'confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [that] precedent.'"  Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003)

(per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)); see also Bell v.

-4-

Cone, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of §
2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies
the correct governing legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith,
539 U.S. 510, 520 (2003) (quoting Williams v. Taylor, 529 U.S. at 413); see also Bell v.
Cone, 535 U.S. at 694. But, "[i]n order for a federal court to find a state court's
application of [Supreme Court] precedent 'unreasonable,' the state court's decision
must have been more than incorrect or erroneous. The state court's application must
have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. at 520-21 (internal
citation omitted); see also Williams v. Taylor, 529 U.S. at 409. The "AEDPA thus
imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands
that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 559 U.S.
766, __, 130 S. Ct. 1855, 1862 (2010) (quoting Lindh v Murphy, 521 U.S. at 333, n.7;
Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "[a] state court's determination that a claim
lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'
on the correctness of the state court's decision." Harrington v. Richter, _ U.S. _, 131 S.
Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The
Supreme Court emphasized "that even a strong case for relief does not mean the state
court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S.
63, 75 (2003)). Pursuant to § 2254 (d), "a habeas court must determine what
arguments or theories supported or . . . could have supported, the state court's decision;
and then it must ask whether it is possible fairminded jurists could disagree that those

-5-

arguments or theories are inconsistent with the holding in a prior decision" of the

Supreme Court."  Id.  Thus, in order to obtain habeas relief in federal court, a state

prisoner must show that the state court's rejection of his claim "was so lacking in

justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement."  Id. at 786-87.

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court rendered its decision.  See

Williams v. Taylor, 529 U.S. at 412; see also Knowles v. Mirzayance, 556 U.S. 111, 122

(2009) (noting that the Supreme Court "has held on numerous occasions that it is not

'an unreasonable application of clearly established Federal law' for a state court to

decline to apply a specific legal rule that has not been squarely established by this

Court").  Section 2254(d) "does not require a state court to give reasons before its

decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v.

Richter, 131 S. Ct. At 785.  Furthermore, it "does not require citation of [Supreme Court]

cases – indeed, it does not even require awareness  of [Supreme Court] cases, so long

as neither the reasoning nor the result of the state-court decision contradicts them."

Early v. Packer, 537 U.S. 3, 8 (2002) (emphasis in original); see also Mitchell v.

Esparza, 540 U.S. at 16.  While the requirements of "clearly established law" are to be

determined solely by Supreme Court precedent, the decisions of lower federal courts

may be useful in assessing the reasonableness of the state court's resolution of an

issue.  See Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) (citing Williams v.

-6-

Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002)).

A state court's factual findings are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may only rebut this with clear and convincing evidence. See Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998). Furthermore, habeas review is limited by statute to the record that was before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, _U.S._, _,131 S. Ct. 1388, 1398 (2011).

## IV.    Analysis

### A.    Procedural Default

Respondent asserts that two of petitioner's claims are procedurally defaulted because petitioner failed to present the issues to the trial court before raising the issues on appeal. On habeas review, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). The Supreme Court has explained the rationale behind such a policy: "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix v. Singletary, 520 U.S. at 525. This is the case here. The procedural issues are complex issues of state law and the substantive issues are more readily decided on the merits. Accordingly, the Court need not address the procedural-default issues and will proceed to the merits of petitioner's claims.

**B.**     **Ineffective Assistance of Counsel**

Petitioner first asserts that he was denied the effective assistance of counsel because counsel failed to investigate an insanity or temporary insanity defense.

**1. Clearly Established Federal Law**

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court created a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient.  This requires showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.  Id. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial.  Id.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  Id. at 690.  The reviewing court's scrutiny of counsel's performance is "highly deferential."  Id. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Id. at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  Id. at 689.

For the prejudice prong of Strickland v. Washington, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the

-8-

result of the proceeding would have been different." Id. at 694.  A reasonable

probability is one that is sufficient to undermine confidence in the outcome.  Id.  On

balance, "[t]he benchmark for judging any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that

the trial cannot be relied on as having produced a just result." Id. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of

ineffective assistance of counsel claims arising from state criminal proceedings is quite

limited on habeas review due to the deference accorded trial attorneys and state

appellate courts reviewing their performance.  "The standards created by Strickland and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is

'doubly' so." Harrington v. Richter, 131 S. Ct. at 788 (internal and end citations

omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were

reasonable.  The question is whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard." Id.

### 2.  The State Court's Decision

The Michigan Court of Appeals denied relief on Petitioner's ineffective assistance

claim because there was nothing on the record to support an insanity defense:

> A person meets the legislative definition of "legally insane" if when the
> offense occurs, as a result of mental illness or mental retardation "the
> person lacks substantial capacity either to appreciate the nature and quality or the
> wrongfulness of his or her conduct or to conform his or her conduct to the
> requirements of the law."  MCL 768.21a(1).  In this case, nothing in the
> record tends to support defendant's assertion that he may have qualified as
> legally insane at the time of the charged sexual assaults.  According to the
> presentence report, defendant has no history of mental illness.  Although the
> report documents that defendant has a history of marijuana and alcohol use,
> defendant correctly recognizes that voluntary intoxication cannot form the
> basis for an insanity defense.  MCL 76821a(2); People v. Caulley, 197 Mich.

App. 177, 186-188, 494 N.W.2d 853 (1992).  Defendant emphasizes that involuntary intoxication may support an insanity defense, but our review of the record reveals no evidence of defendant's intoxication at the time of the offenses, let alone any support for a finding of involuntary intoxication. We observe that defendant testified at trial and gave no indication that any form of intoxication may have affected his charged conduct, and instead denied that the charged incidents ever occurred.

In summary, because no record support exists for a meritorious insanity defense, defendant has not met his burden of showing that defense counsel was ineffective for failing to investigate or prepare an insanity defense at trial.

Stagger, 2009 WL 1567349, at *1-*2.

### 3. Analysis

Federal law requires that defense counsel conduct a reasonable investigation of the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary.  See Wiggins v. Smith, 539 U.S. at 522-23 (clarifying that the focus is on whether the investigation supporting counsel's decision not to introduce mitigating evidence was "itself reasonable"); Strickland v. Washington, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); Stewart v. Wolfenbarger, 468 F.3d 338, 356-57 (6th Cir. 2006) (finding that failure to contact a witness who would have rebutted unfavorable witness testimony was ineffective assistance); Towns v. Smith, 395 F.3d 251, 259 (6th Cir. 2005) (finding that trial counsel's failure to make any attempt to communicate with a "known and potentially important witness" was objectively unreasonable) (citation omitted); O'Hara v. Wiggington, 24 F.3d 823, 828 (6th Cir. 1994) (finding no deficiency in counsel's performance where counsel investigated all

-10-

witnesses given to him by defendant and spoke with defendant fifteen times between arrest and plea).

"The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000). See also Towns v. Smith, 395 F.3d at 258 ("A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his options and make a reasonable choice between them.'") (quoting Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991)). "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. at 527.

Here, trial counsel's decision not to request an independent psychiatric examination in order to investigate an insanity defense was objectively reasonable. According to the record, trial counsel had no facts that would prompt a reasonable attorney to investigate an insanity defense. There was no history of mental illness, and an insanity defense would have been an admission that petitioner engaged in sexual activity with J.G. and Z.G. An admission of this sort would have been inconsistent with petitioner's defense that the allegations about him were untrue.

Petitioner nevertheless asserts that he was a chronic alcoholic at the time and does not "have memory of the wrongfulness of [his] conduct." He implies that his substance abuse was a form of involuntary intoxication, which supported an insanity defense. (Pet. for Writ of Habeas Corpus at 4-5.) Even if true, these facts do not support an insanity defense under Michigan law.

-11-

"An individual is legally insane if, as a result of mental illness . . . or as a result of being mentally retarded . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MICH. COMP. LAWS § 768.21a(1). "An individual who was under the influence of voluntarily consumed or injected alcohol . . . at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol . . . ." MICH. COMP. LAWS § 768.21a(2). And involuntary intoxication can support an insanity defense only

> when the chemical effects of drugs or alcohol render the defendant temporarily insane. As in any case in which the defendant interposes an insanity defense, it remains incumbent upon the defendant to demonstrate that the involuntary use of drugs created a state of mind equivalent to insanity.

Caulley, 494 N.W.2d at 858.

Here, there was no evidence of any intoxication – voluntary or involuntary – at the time of the offenses. In fact, J.G. told her mother that petitioner was not drunk at the time, and the police officer who took the report from the complainants' cousin did not recall any discussion about alcohol. (Trial Tr. Vol. I, 119, 241, Oct. 11, 2007.) Therefore, it was a reasonable decision on the part of trial counsel not to pursue an insanity defense and to focus instead on trying to create reasonable doubt as to the prosecutor's witnesses.

In conclusion, the Michigan Court of Appeals' decision that trial counsel was not ineffective for failing to investigate or prepare an insanity defense is not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court in Strickland v. Washington and subsequent cases. The state court's decision also does

-12-

not represent an unreasonable determination of the facts in light of the evidence produced at trial.  Petitioner therefore has no right to relief on the basis of his first claim.

C.    **Missing Evidence Instruction Issue**

Petitioner asserts that he was denied equal protection and due process of law when the trial court failed or refused to read a missing-evidence jury instruction. Petitioner appears to believe that the jury instruction was necessary because the prosecution failed to produce a recording of the complainant's interview with a social worker at Care House.[2]  The Michigan Court of Appeals reviewed this claim for "plain error," because petitioner did not request a missing-evidence instruction at trial.  The Court of Appeals then analyzed the claim and concluded that no error, plain or otherwise, occurred as a result of the trial court's failure to give a missing- evidence instruction.

The pertinent question on habeas review of jury instructions is "whether the ailing instruction[s] . . . so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  To obtain habeas relief, the instructions must have "'so infused the trial with unfairness as to deny due process of law.'" Id. at 75 (quoting Lisenba v. California, 314 U.S. 219, 228 (1941)).  An omitted or incomplete jury instruction "is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

---

[2] Care House is a private, nonprofit organization, which coordinates services and conducts forensic interviews in cases of alleged sexual abuse or neglect of children. (Trial Tr.  Vol. I, 195-96, 207, Oct. 11, 2007.)

Petitioner has not cited or quoted an instruction that the trial court should have read to the jury, but in his state appellate brief he cited People v. Davis, 503 N.W.2d 457 (Mich. Ct. App. 1993), overruled on other grounds by People v. Grissom, 821 N.W.2d 50, 62-63 (Mich. 2012). In Davis, the defendant argued that the trial court erred in failing to instruct the jury that, "where the prosecution fails to make reasonable efforts to preserve material evidence, the jury may infer that the evidence would have been favorable to defendant." Id. at 463. The Michigan Court of Appeals determined that the trial court did not err in declining to give the instruction because the defendant failed to demonstrate that the prosecutor acted in bad faith by not producing the evidence. Instead, the evidence did not exist or could not be located. Id.

Petitioner has not demonstrated that the prosecutor acted in bad faith in failing to produce a recording of J.G.'s interview with the social worker. Rather, the evidence simply did not exist. As explained by the state court,

> the record substantiates that because of a faulty recording mechanism, no recording of the victim's Care House interview ever existed. The examiner who interviewed the victim testified that although she intended to record the interview, nothing was actually recorded due to an apparent mechanical malfunction. The prosecution neither suppressed nor destroyed the recording of the victim's interview, which simply never existed, and no other evidence tended to substantiate that the prosecution somehow acted in bad faith.

Stagger, 2009 WL 1567349, at *2; see also Trial Tr. Vol. I, 204-05, Oct. 11, 2007.

Not only is there no evidence of bad faith by the prosecution, there is no reason to believe that a recording of the interview would have aided petitioner in establishing that the alleged assaults did not occur or that he did not commit them. Thus, it cannot be said that the trial judge's failure to read a jury instruction on missing evidence

-14-

infected the entire trial with such unfairness that it violated petitioner's right to due process.  The Michigan Court of Appeals' decision, therefore, is not contrary to nor an unreasonable application of, Estelle v. McGuire, Cupp v. Naughten, or Henderson v. Kibbe.

### D.  The Sentencing Guidelines

Petitioner contends next that the trial court erroneously calculated his sentencing guidelines, thereby depriving him of due process of law.

A state court's alleged misinterpretation and misapplication of its sentencing laws and guidelines "is a matter of state concern only," Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003) (citations omitted), and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  For a petitioner to obtain relief from a state conviction, he must show that he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. at 68.  Therefore, petitioner's challenge to the state trial court's scoring of the sentencing guidelines is not a cognizable claim on habeas corpus review. Whitfield v. Martin, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).

Even if this claim were cognizable on federal habeas review, it lacks merit for the following reasons. Petitioner first contends that the trial court deprived him of due process when it scored five points for offense variable three.  According to the Michigan Sentencing Guidelines, if "[b]odily injury not requiring medical treatment occurred to a victim," then five points should be scored.  MICH. COMP. LAWS § 777.33(1)(e).  The Michigan Court of Appeals upheld this score because there was evidence on the record supporting the allegation that injury not requiring medical treatment occurred:  the

-15-

complainant testified that petitioner's acts of penetration "hurted." (Trial Tr. Vol. I, 164, 170 (Oct. 11, 2007). Because testimony that petitioner's acts "hurted" is a reasonable basis for the conclusion that injury occurred, the decision of the Court of Appeals is not based on an unreasonable determination of the facts.

Petitioner next contends that the trial court deprived him of due process when it scored fifteen points for offense variable eight. The Michigan Sentencing Guidelines dictate that, if "[a] victim was asported to another place of greater danger or to a situation of greater danger[,]" fifteen points should be scored. MICH. COMP. LAWS § 777.38(1)(a). The Michigan Court of Appeals found no error with this score, because

> the trial court relied on evidence that the victim accompanied defendant from the living room to the bedroom, an asportation of the victim to a place of greater danger. The victim testified that while she played video games in the living room of defendant's residence, he "told her to go in" his bedroom, closed the door, and sexually assaulted her. The trial court did not abuse its discretion in scoring 15 points for OV 8 because the victim's testimony establishes that defendant directed her to a place of greater danger, his closed bedroom, where the assault took place with no one else present. See People v. Cox, 268 Mich. App. 440, 454, 709 N.W.2d 152 (2005) (finding no abuse of discretion in the trial court's assignment of 15 points for OV 8 where the defendant, without physical force, transported the victim to his house where a sexual assault took place); People v. Spanke, 254 Mich. App. 642, 648, 658 N.W.2d 504 (2003) (upholding the trial court's scoring of 15 points for OV 8 because "[t]he victims were moved, even if voluntarily, to defendant's home where the criminal acts occurred," and "[t]he victims were without doubt asported to another place or situation of greater danger, because the crimes could not have occurred as they did without the movement of defendant and the victims to a location where they were secreted from observation by others").

Stagger, 2009 WL 1567349, at *3.

The record supports the state court's finding that petitioner directed J.G. to rooms in his home where no one else was present or able to observe him commit the crimes.

-16-

(Trial Tr. Vol. I, 153-61, Oct. 11, 2007.)  It was reasonable therefore to conclude that the victim was moved to a place of greater danger, because it was more likely that a crime could occur in the bathroom or bedroom than in the living room.  The decision of the Court of Appeals is based on a reasonable determination of the facts.

Petitioner also contends that it was error for the trial court to score ten points on offense variable nine for placing two victims in danger of physical injury or death.  See MICH. COMP. LAWS § 777.39(1)(c).  This claim is moot, because the Court of Appeals agreed with petitioner that it was error to score offense variable nine at ten points.  But because the subtraction of ten points did not affect petitioner's minimum sentencing guidelines range, resentencing was not required.  Instead, the Court of Appeals ordered an administrative correction of petitioner's offense variable score.  Stagger, 2009 WL 1567349 at *3.

To conclude, petitioner's claim is not cognizable on habeas review and, even if it were, the claims lack substantive merit.  Petitioner therefore has no right to relief on the basis of his claim about the scoring of the sentencing guidelines.

### E.  Length of the Sentence

#### 1.  Incomplete or Inaccurate Information During Sentencing

Petitioner alleges that the trial court lacked accurate and complete information about him and deprived him of due process by failing to consider mitigating evidence at his sentencing.  The Michigan Court of Appeals reviewed this claim for "plain error" because petitioner did not raise his constitutional complaints in the trial court.  The Court of Appeals found "no plain constitutional due process or equal protection error affecting petitioner's substantial rights."  According to the Court of Appeals, the trial court imposed a presumptively proportionate sentence within the guidelines range" and petitioner "failed to overcome the presumption by presenting any evidence suggesting that the trial court lacked awareness of all appropriate circumstances in crafting [his] sentence."  Stagger, 2009 WL 1567349, at *4.

The Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments."  U.S. CONST.  amend VIII.  The Amendment does not require trial courts to consider mitigating evidence during sentencing in noncapital cases because of the qualitative difference between death and all other penalties. Harmelin v. Michigan, 501 U.S. 957, 995 (1991); accord Engle v. United States, 26 F. App'x 394, 397 (6th Cir. 2001) ("The Eighth Amendment does not require consideration of mitigating factors at sentencing in non-capital cases . . . .") (citing Harmelin v. Michigan, 501 U.S. at 995); Scrivner v. Tansy, 68 F.3d 1234, 1240 (10th Cir. 1995) ("[N]o violation of a petitioner's Eighth Amendment or due process or equal protection rights occurs when the trial court does not consider mitigating factors during sentencing

-18-

in a noncapital case.") (citing <u>United States v. LaFleur</u>, 971 F.2d 200, 211-12 (9th Cir.

1991)).

Furthermore, to prevail on a claim that the trial court used inaccurate information

at sentencing, petitioner must show that the trial court relied on "extensively and

materially false" information, which he had no opportunity to correct through counsel.

<u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948).  He must demonstrate that his sentence

was "founded at least in part upon misinformation of constitutional magnitude."  <u>United

States v. Tucker</u>, 404 U.S. 443, 447 (1972).

Petitioner has failed to show that the trial court lacked awareness of all of the

facts or relied on inaccurate information.  As explained by the Michigan Court of

Appeals:

> [i]n making this claim, defendant does not specify what mitigating
> circumstances the trial court should have considered.  We will assume that
> defendant intends to refer to the facts that he supported his family and had
> a history of substance abuse, which he mentions in a subsequent issue.
> However, a review of the sentencing hearing reveals that the trial court had
> awareness of these and other allegedly mitigating factors.  Defense counsel
> urged the trial court at the hearing to consider that defendant had family
> support, financially supported his children and his elderly parents, and had
> a record of military service.  Defendant's prayerful allocution made the court
> aware of his strong religious beliefs.  The trial court remarked that it had
> reviewed the PSIR [Presentence Investigation Report], and thus knew that
> defendant had acknowledged a history of alcohol and marijuana use.  The
> PSIR also reflected a prior charge without conviction of marijuana
> possession, and defendant's convictions of kidnapping, unarmed robbery,
> and assault and battery.  Because the court presided at trial, it also plainly
> had awareness of the repeated acts of sexual abuse that defendant inflicted
> on the young victim.

<u>Stagger</u>, 2009 WL 1567349, at *4.

As noted by the Court of Appeals, the trial court did have information of

petitioner's substance abuse and other potentially mitigating factors given by the

-19-

defense attorney before he was sentenced.  Further, petitioner has not established that his sentence was based upon misinformation, much less misinformation of constitutional magnitude.  The decision of the Michigan Court of Appeals therefore is neither contrary to, nor an unreasonable application of, Supreme Court precedent.  It also does not represent an unreasonable determination of the facts in light of the evidence presented to the trial court.

### 2. <u>The Severity of the Sentence</u>

Petitioner also appears to be challenging the length of his sentence, which was enhanced as a result of his prior conviction for kidnapping.  He argued in his state court brief that his sentence of thirty to fifty years was cruel and unusual punishment under the state and federal constitutions.  The Michigan Court of Appeals reviewed this claim for "plain constitutional error" affecting petitioner's substantial rights, because he raised the issue for the first time on appeal.  The Court of Appeals discerned no plain constitutional error and denied relief because the sentence was within the guidelines range and presumptively proportionate:

> Defendant additionally criticizes his sentence as violative of the United States Constitution's prohibition against cruel and unusual punishment, U.S. Const, Am VIII, and the Michigan Constitution's prohibition against cruel or unusual punishment, Const 1963, art 1, § 16, given the likelihood that he has a serious mental illness, his substance abuse history, his support of his family, and the sentencing goal of rehabilitation. . . .    "[A] sentence within the guidelines range is presumptively proportionate, and a sentence that is proportionate is not cruel or unusual punishment."  <u>Powell</u>, <u>supra</u>, at 323, 750 N.W.2d 607.

<u>Stagger</u>, 2009 WL 1567349, at *4.

-20-

a. **Clearly Established Federal Law**

The alleged violation of the Michigan constitution is not a basis for habeas relief,
Lewis v. Jeffers, 497 U.S. at 780, but, as the state court recognized, the Eighth
Amendment to the United States Constitution also prohibits the imposition of "cruel and
unusual punishments."  U.S. CONST. amend VIII.  The duration or severity of a
sentence, however, generally is not a basis for habeas relief.  Townsend v. Burke, 334
U.S. at 741.

The Supreme Court, moreover has upheld stricter sentences than the one in
question here.  For example, in Rummel v. Estelle, 445 U.S. 263 (1980), the Supreme
Court held that a mandatory life sentence with the possibility of parole for a three-time
offender convicted of obtaining $120.75 by false pretenses did not constitute cruel and
unusual punishment under the Eighth Amendment.  The prior convictions in Rummel's
case consisted of fraudulent use of a credit card to obtain $80 worth of goods or
services and passing a forged check in the amount of $28.36.

In Hutto v. Davis, 454 U.S. 370 (1982) (per curiam), the Supreme Court upheld a
sentence of forty years for possession with intent to distribute nine ounces of marijuana
and distribution of marijuana.  And in Harmelin v. Michigan, which involved a first-time
offender who was convicted of possessing 672 grams of cocaine, the Supreme Court
rejected the defendant's assertion that his sentence of life imprisonment without parole
was grossly disproportionate to the crime.  A plurality of the Supreme Court stated that
"the Eighth Amendment contains no proportionality guarantee."  Harmelin v. Michigan,
501 U.S. at 965.  "Rather, it forbids only extreme sentences that are 'grossly

-21-

disproportionate' to the crime."  Id. at 1001 (Kennedy, J., concurring in part and concurring in the judgment) (quoting Solem v. Helm, 463 U.S. 277, 288  (1983)).

Finally, in Ewing v. California, 538 U.S. 11, 30-31 (2003), the Supreme Court held that a recidivist's sentence of twenty-five years to life in prison for felony grand theft (stealing three golf clubs costing a total of almost $1,200) was not grossly disproportionate and therefore did not violate the Eighth Amendment's prohibition on cruel and unusual punishments.  The Supreme Court stated that, "[t]o be sure, Ewing's sentence is a long one.  But it reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated."  Id. at 30.

### b. Application

Petitioner was sentenced at the age of forty-eight to imprisonment for thirty to fifty years.  He was a second-time offender, and his prior felony conviction involved kidnaping.  (Sentence Tr. 5, Nov. 9, 2007.)  Due to his minimum sentence of thirty years, he could spend much of the remainder of his life in prison.  Nevertheless, the statutory maximum sentence for petitioner's crime was life imprisonment or any term of years, but not less than twenty-five years.  MICH. COMP. LAWS § 750.520b(2)(b).  His sentence did not exceed the statutory limit, and "[a]s long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'"  Austin v. Jackson, 213 F.3d 298, 301 (6th Cir. 2000) (quoting Williams v. New York, 337 U.S. 241, 245 (1949)).

-22-

Furthermore, Tashika Alexander (J.G.'s legal guardian) informed the prosecutor before petitioner's sentencing that petitioner's conduct would affect J.G.'s relationships with people for the rest of her life.  Alexander was not convinced that counseling had helped, and she opined that J.G. and her sister would never have a normal life because of what petitioner did to them.  (Sentence Tr. 20-21, Nov. 9, 2007.)  If the sentences for the nonviolent crimes committed in <u>Rummel v. Estelle</u>, <u>Hutto v. Davis</u>, <u>Harmelin v. Michigan</u>, and <u>Ewing v. California</u>, did not violate the Eighth Amendment, petitioner's sentence of thirty to fifty years for sexual crimes against a young girl is not grossly disproportionate, nor cruel and unusual punishment under the Eighth Amendment.

The state appellate court's decision upholding petitioner's sentence was not contrary to, or an unreasonable application of, Supreme Court precedent.  Nor was the sentence based on an unreasonable determination of the facts in light of the evidence.

## V.   Conclusion

For the reasons stated, petitioner is not entitled to habeas corpus relief on the claims contained in his petition.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus [dkt. #1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

## VI.   Certificate of Appealability; Appellate Filing Fee

Before petitioner may appeal the Court's decision, a certificate of appealability must issue.  <u>See</u> 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this

standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented

are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537

U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  In applying

this standard, a court may not conduct a full merits review, but must limit its examination

to "an overview of the claims in the habeas petition and a general assessment of their

merits."  Id. at 336.  Having conducted the requisite review, the Court concludes that

petitioner has failed to make a substantial showing of the denial of a constitutional right.

　　　　Accordingly,

　　　　**IT IS ORDERED** that a certificate of appealability is **DENIED**.

　　　　**IT IS FURTHER ORDERED,** however, that, if petitioner chooses to appeal this

decision, he may proceed *in forma pauperis* on appeal.

Dated:  April 2, 2013

　　　　　　　　　　　　　　s/George Caram Steeh
　　　　　　　　　　　　　　GEORGE CARAM STEEH
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

| CERTIFICATE OF SERVICE |
| --- |
| Copies of this Order were served upon attorneys of record on April 2, 2013, by electronic and/or ordinary mail and also on Zeno Stagger #666685, Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811. |
| s/Barbara Radke |
| Deputy Clerk |